# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

PARAGON PARTNERS, INC., an Illinois     )
corporation     )
    )
    )    **JURY TRIAL DEMANDED**
        Plaintiff,     )
    )
    )
    )    Cause No.:  4:20-CV-001069
vs.     )
    )
EFS COMPANIES, LLC, a Delaware limited     )
liability company     )
    )
Serve:  The Corporation Trust Company     )
        1209 Orange Street     )
        Wilmington, Delaware 19801     )
    )
and     )
    )
ENSURETY ADMINISTRATIVE SERVICES,     )
INC., a Delaware corporation     )
    )
Serve:  The Corporation Trust Company     )
        1209 Orange Street     )
        Wilmington, Delaware 19801     )
    )
and     )
    )
EGS ADMINISTRATION, LLC, a Delaware     )
 limited liability company     )
    )
Serve:  National Registered Agents, Inc.     )
        1209 Orange Street     )
        Wilmington, Delaware 19801     )
    )
and     )
    )
ENSURETY VENTURES, L.L.C., a Missouri     )
Limited liability company     )
    )
Serve:  Stephen J. Smith     )
        825 Maryville Centre Drive, Suite 300     )

1

Town and Country, Missouri 63017  )
             )
and           )
             )
EGV COMPANIES, INC., a Delaware corporation )
             )
Serve:  Resident Agents, Inc.   )
   8 The Green, Suite R   )
   Dover, Delaware 19901   )
             )
and           )
             )
BARANTAS INCORPORATED, a Missouri )
corporation        )
             )
Serve:  Steven J. Smith    )
   825 Maryville Centre Drive, Suite 300 )
   Town and County, Missouri 63017 )
             )
and           )
             )
BARANTAS GROUP, LLC, a Missouri limited )
liability company      )
             )
Serve:  Steven J. Smith    )
   825 Maryville Centre Drive, Suite 300 )
   Town and County, Missouri 63017 )
             )
and           )
             )
ST. AUBREY SERVICES, LLC, a Missouri limited)
liability company      )
             )
Serve:  Steven J. Smith    )
   825 Maryville Centre Drive, Suite 300 )
   Town and County, Missouri 63017 )
             )
and           )
             )
Patrick J. O'Brien, Individual   )
             )
Serve: Patrick J. O'Brien   )
   4618 Crosshaven Court   )
   St. Charles, Missouri 63304  )
             )
and           )

|  |  |
|---|---|
| Susan O'Brien, Individual | ) |
| | ) |
| Serve:  Susan O'Brien | ) |
|        4618 Crosshaven Court | ) |
|        St. Charles, Missouri 63304 | ) |
| | ) |
| and | ) |
| | ) |
| Brian P. Fox, Individual | ) |
| | ) |
| Serve:  Brian P. Fox | ) |
|        38 Windcastle Drive | ) |
|        St. Charles, Missouri 63304 | ) |
| | ) |
| and | ) |
| | ) |
| Brittany M. Fox, Individual | ) |
| | ) |
| Serve:  Brittany M. Fox | ) |
|        38 Windcastle Drive | ) |
|        St. Charles, Missouri 63304 | ) |
| | ) |
| Defendants. | ) |
| | ) |

## <u>COMPLAINT</u>

COMES NOW Plaintiff, Paragon Partners, Inc., by and through its undersigned counsel, and for its Complaint, states as follows:

## <u>ALLEGATIONS COMMON TO ALL COUNTS</u>

### I.    PARTIES

1.  Plaintiff Paragon Partners, Inc. ("Plaintiff"), is, and at all times relevant hereto was, a corporation incorporated under the laws of the State of Illinois with its principal place of business located in Dupo, Illinois.

2.    Defendant EFS Companies, LLC ("EFS") is, and at all times relevant hereto was, a limited liability company formed under the laws of the State of Delaware, with its principal place of business located at 2342 Technology Drive, O'Fallon, Missouri 63368.

3.    Ensurety Administrative Services, Inc. ("EAS") is, and at all times relevant hereto was, a corporation incorporated under the laws of the State of Delaware, with its principal place of business located at 2343 Technology Drive, O'Fallon, Missouri 63368.

4.    Defendant EGS Administration, LLC ("EGS") is, and at all times relevant hereto was, a limited liability company formed under the laws of the State of Delaware, with its principal place of business located at 2342 Technology Drive, O'Fallon, Missouri 63368.

5.    Defendant Ensurety Ventures, L.L.C. ("EVS") is, and at all times relevant hereto was, a limited liability company formed under the laws of the State of Missouri with its principal place of business located at 2342 Technology Drive, O'Fallon, Missouri 63368.

6.    Defendant EVG Companies, Inc. ("EGV") is, and at all times relevant hereto was, a corporation formed under the laws of the State of Delaware, with its principal place of business located at 2342 Technology Drive, O'Fallon, Missouri 63368.

7.    Defendant Barantas Incorporated. ("Barantas I") is, and at all times relevant hereto was, a corporation formed under the laws of the State of Missouri with its principal place of business located at 2342 Technology Drive, O'Fallon, Missouri 63368.   On July 9, 2013, Barantas I was issued a service mark registration by the United States Patent and Trademark Office ("USPTO") for "Omega Autocare" in connection with '[p]roviding and administering motor vehicles service contracts for new and used vehicles which cover motor vehicle maintenance and repair services."

8.   Defendant Barantas Group, LLC ("Barantas II") is, and at all times relevant hereto was, a limited liability company formed under the laws of the State of Missouri with its principal place of business located at 2342 Technology Drive, O'Fallon, Missouri 63368.

9.   Defendant St. Aubrey Services, LLC ("STS") is, and at all times relevant hereto was, a limited liability company formed under the laws of the State of Missouri with its principal place of business located at 2342 Technology Drive, O'Fallon, Missouri 63368.

10. Defendant Patrick J. O'Brien is a citizen of the State of Missouri who resides at 4618 Crosshaven Court, St. Charles, Missouri 63304.

11. Defendant Susan O'Brien is a citizen of the State of Missouri who resides at 4618 Crosshaven Court, St. Charles, Missouri 63304.

12. Defendant Brian P. Fox is a citizen of the State of Missouri who resides at 38 Windcastle Drive, St. Charles, Missouri.

13. Defendant Britany M. Fox is a citizen of the State of Missouri who resides at 38 Windcastle Drive, St. Charles, Missouri.

14. Defendants Patrick J. O'Brien and Brian Fox shall hereinafter individually and collectively be referred to as the "Individual Defendants."

15. Upon information and belief, one or both of the Individual Defendants control EFS, EAS, EGS, EVS, EGV, Barantas I, Barantas II and STS.

16. Upon information and belief, Individual Defendants used one, some or all of these entities in the origination, administration and sale of the vehicle service contracts that are in issue in this Complaint, the exact entities to be determined at trial.

5

17. Upon information and belief, one, some or all of the Defendants made the representations to Plaintiff that are in issue in this Complaint, the exact Defendants to be determined at trial.

18. Upon information and belief, one, some or all of the Defendants entered into the contract with Plaintiff that is in issue in the Complaint, the exact Defendants to be determined at trial.

19. Upon information and belief, one, some or all of these entities received fraudulent intercompany transfers that are also at issue in this Complaint, the exact entities to be determined at trial.

20. Individual Defendants, EFS, EAS, EGS, EVS, EGV, Barantas I, Barantas II and STS shall hereinafter individually and collectively be referred to as the "Defendants").

## II.   JURISDICTION AND VENUE

21. This Court has jurisdiction over the causes of action asserted herein pursuant to 28 U.S.C. §§ 1332.

22. Specifically, Plaintiff is an Illinois corporation that was incorporated on February 11, 2015 and was voluntarily dissolved on December 20, 2019. Its principle place of business is located in Dupo, Illinois.

23. Pursuant to 805 ILCS 5/12.80, this Complaint has been commenced within five years after the date of such dissolution with respect to this right or claim existing prior to, at the time of, or after such dissolution.

24. Defendant EFS is a Delaware limited liability company with its principal place of business located at 2342 Technology Drive, Missouri 63368.

25. Defendant EAC is a Delaware corporation with its principal place of business located at 2342 Technology Drive, O'Fallon, Missouri 63368

26. Defendant EVS is a Missouri limited liability company with its principal place of business located at 2342 Technology Drive, O'Fallon, Missouri 63368.

27. Defendant EVG is a Delaware corporation with its principal place of business located at 2342 Technology Drive, O'Fallon, Missouri 63368.

28. Defendant Barantas I is a Missouri corporation with its principal place of business located at 2342 Technology Drive, O'Fallon, Missouri 63368.

29. Defendant Barantas II is a Missouri limited liability company with its principal place of business located at 2342 Technology Drive, O'Fallon, Missouri 63368.

30. Defendant STS is, and at all times relevant hereto was, a limited liability company formed under the laws of the State of Missouri with its principal place of business located at 2342 Technology Drive, O'Fallon, Missouri 63368

31. Defendant Patrick J. O'Brien is a citizen of the State of Missouri, whose principal residence is at 4618 Crosshaven Court, St. Charles, Missouri 63304.

32. Defendant Susan O'Brien is a citizen of the State of Missouri, whose principal residence is at 4618 Crosshaven Court, St. Charles, Missouri 63304.

33. Defendant Brian P. Fox is a citizen of the State of Missouri, whose principal residence is 38 Windcastle Drive, St. Charles, Missouri.

34. Defendant Brittney Fox is a citizen of the State of Missouri, whose principal residence is at 38 Windcastle Drive, St. Charles, Missouri.

35. Therefore, complete diversity of citizenship exists. The amount in controversy exceeds the sum or value of $75,000.

36. This Court has personal jurisdiction over all Defendants because they either (1) reside within this District; (2) regularly conduct substantial business within this District to include entering to vehicle service contracts; and (3)   a significant portion of the unlawful conduct alleged in this Complaint occurred in, and/or was directed from this District, specifically Defendants prepared the funding reports in this District, at the direction of Defendants from this District, and delivered to Plaintiff from this District.

37. Venue is proper in this Court under 28 U.S.C. § 1391(a)(2) because Defendants conduct a significant amount of business within this District and because the wrongful conduct giving rise to this case occurred in, and/or was directed from, this District. Venue is also proper because the defendants reside in this District.

### III.   FACTS IN SUPPORT

38. Defendants are engaged in the origination, administration, and sale of vehicle service contracts ("Vehicle Service Contracts") throughout the United States that are marketed and sold under various names, including "Omega Auto Care," "The Renewal Center," "Ownershield Auto Care" and "The TechChoice."

39. Defendants opened a call center business in Dupo, Illinois, that, among other things, was engaged in the solicitation of vehicle owners (the "Customers") to renew their existing, expiring, or expired Vehicle Service Contracts (the "Business"), which Defendants desired Plaintiff to manage on Defendants' behalf.

40. Therefore, between on or about February 11, 2015 and February 20, 2015,  one or both of the Individual Defendants, on behalf of the Defendants, made material representations to Plaintiff to induce Plaintiff to manage the Business on behalf of the Defendants (the "Representations"), namely:  (a) Defendants would to pay to Plaintiff a fee on a weekly basis in

an amount equal to 49% of the "Net Income" of the Business (the "Management Fee(s)"); and (b) the "Net Income" of the Business would be the net revenue of the Business on a cash basis (the "Net Revenue"), less all expenses of operating the Business, which included, but were not limited to: (i) all employee expenses to operate the Business, including but not limited to, wages, payroll taxes, and other benefits solely determined by the Defendants (the "Payroll Expenses"); (ii) insurance, lease payments, utilities, professional fees, and other customary business expenses (the "Operating Expenses"); less (iii) a reasonable reserves as calculated by the Defendants (the "Reserves").

41. Also, between February 11, 2015 and February 20, 2015, Plaintiff and the Defendants entered into an oral contract (the "Contract"), pursuant to which the Defendants retained Plaintiff to manage the Business on behalf of the Defendants.

42. The material terms of the Contract were substantially as follows: (a) Plaintiff agreed that it would manage the Business on behalf of the Defendants; and (b) Defendants agreed that they would pay the Management Fee to Plaintiff on a weekly basis.

43. On February 20, 2015, Plaintiff began to manage the Business on behalf of Defendants in reliance on the Representations and pursuant to the terms of the Contract.

44. Beginning at or about the same time in O'Fallon, Missouri, EVS began calculating the weekly Management Fee payable to Plaintiff and began paying Management Fees to Plaintiff (although less than the agreed-upon amount) on a weekly basis from O'Fallon, Missouri.

45. On or about March 11, 2015, in an attempt to memorialize the terms of the Contract in writing and to add additional terms, Defendants caused a "Management Agreement" to be drafted that, among other things, confirmed the material terms of the Contract (the "Management

9

Agreement"), a copy of which is attached hereto as <u>Exhibit A</u> and incorporated herein by reference.

46. On or about April 2, 2015, Defendants delivered the Management Agreement to Plaintiff.

47. Upon information and belief, the Management Agreement was never executed because the proposed counterparty to Plaintiff as set forth in the Management Agreement, "Ensurety Group Services, L.L.C." was never formed as a limited liability company in the State of Delaware.

48. Nevertheless, from February 20, 2015 to August 31, 2019, Plaintiff fully performed its duties and obligations under the Contract, culminating in renewing thousands of existing, expiring, or expired Vehicle Service Contracts on behalf of Defendants, generating millions of dollars in Net Revenue to the Business. *Brown v. Hannibal Anesthesia Service, Inc*.,     972 S.W.2d 646, 648 (Mo. App. 1998).

*49.* The Contract was of uncertain duration, terminable by either party at any time, and therefore not one whose performance could not possibly be completed within a year. *Restatement (Second) of Contracts § 130, comment a. (1981).*

50. The Contract represents a valid and binding contract between Plaintiff and Defendants.

51. Each week from February 20, 2015 to March 31, 2019, Shawna Killian[1], a Senior Accountant for EVS, prepared a funding report in Excel in O'Fallon, Missouri and forwarded it to, among other persons, Andrew Stuecken, the comptroller of EVS in O'Fallon, Missouri, to

---

[1] Ms. Killian's email signature states that she is a Senior Accountant for "Ensurety, Inc." although that entity does not appear to exist.

verify the weekly  Management Fee to be paid and to authorize it to be paid to Plaintiff (the "EGS Funding Reports").

52. Ms. Killian prepared each of the weekly EGS Funding Reports for the sole purpose of calculating the amount of the Management Fee to be paid to Plaintiff on a weekly basis pursuant to the Contract (49% of Net Income) and the amount that was retained by Defendants (51% of Net Income), and for Mr. Steuken to authorize the payment to Plaintiffs.

53. Each EGS Funding Report contained a calculation of the Net Revenue and the Net Income of the Business on a weekly basis, as agreed in the Contract, and each Management Fee that was paid to Plaintiff on a weekly basis, as agreed in the Contract.

54. From, upon information and belief, January 1, 2016 to September 10, 2017, the Business generated additional Net Revenue in the form of an additional payment on each Vehicle Service Contract in the amount of $370.00 (the "Secret Overfund").

55. From September 11, 2017 to February 9, 2018, the Secret Overfund on each Vehicle Service Contract was increased by $250.000 to $620.000, which constituted additional Net Revenue to the Business over that time.

56.  From February 10, 2018 to August 31, 2019, the Secret Overfund was increased by $150.000 to $770.00, which constituted additional Net Revenue to the Business over that time.

57. The Secret Overfund amounts collected by the Business for each Vehicle Service Contract are not reported in the EGS Funding Reports.

58. The data in each of the weekly excel EGS Funding Reports that was prepared in O'Fallon, Missouri and delivered to Plaintiff by EVS was materially misstated and fraudulently misrepresented the true financial performance of the Business because, without limitation, they fraudulently understated the amount of Net Revenue of the Business by failing to include the

amount of the Secret Overfund for each Vehicle Service Contract collected, thereby fraudulently reducing the amount of the Management Fee paid to Plaintiff for those weeks.

59. From on or about February 20, 2015 to March 31, 2019, the Business also collected financing interest charges for each of the Vehicle Service Contracts that was financed by EFS, a related entity, or a third-party finance company (the "Finance Charges").

60.  The Financing Charges collected on each financed Vehicle Service Contract are not reported consistently in the EGS Funding Reports.

61. The date in each of the weekly excel EGS Funding Reports that was prepared in O'Fallon, Missouri and delivered to Plaintiff by EVS was materially misstated and fraudulently misstated the true financial performance of the Business because, without limitation, they fraudulently understated the amount of Net Revenue of the Business by failing to include the amount of the Financing Charges for each financed Vehicle Service Contract collected, thereby fraudulently reducing the amount of the Management Fee paid to Plaintiff for those weeks.

62. Each EGS Funding Report also contained calculations of expenses that comprised Payroll Expenses and Operating Expenses, as set forth in the Contract.

63.  The data in each of the weekly excel EGS Funding Reports that was prepared in O'Fallon, Missouri and delivered to Plaintiff by EVS was materially misstated and fraudulently misrepresented the true financial performance of the Business because they overstate and grossly misrepresent the amount of Payroll Expenses, Operating Expenses, and Reserves, to include, without limitation, Banking & Financing Expenses, Payroll & Fringe Benefits, Building & Maintenance Expenses, Professional Expenses, the "Expense allocation IN" category, the "Other Operating Expense" category, as well as adding in "write off future receipts" to the "cancel

reserve category," and allocating payments to STS and counting them as expenses, thereby fraudulently reducing the amount of the Management Fee paid to Plaintiff for those weeks.

64. From September 30, 2017 to February 28, 2019, fraudulent intercompany transfers were withdrawn from the Business and paid to related companies, including without limitation, a transfer to EGV in the amount of $754, 029.98 in 2017, a transfer to EGV in the amount of $1,240,000 in 2018, and a transfer to EGC in the amount of $135,000 in 2019 as well as transfers to "Omega Autocare" (the "Fraudulent Intercompany Transfers").

65. The data in each of the weekly excel EGS Funding Reports that was prepared in O'Fallon, Missouri and delivered to Plaintiff by EVS was materially misstated and fraudulently misrepresented the financial performance of the Busines because, without limitation, they fraudulently understated the amount of Net Revenue of the Business by failing to include the amount of the Fraudulent Intercompany Transfers, thereby fraudulently reducing the amount of the Management Fee paid to Plaintiff for those weeks..

66. Upon information and belief, on fraudulent spousal transfers were withdrawn from the Business and paid to each of Susan O'Brien and Brittany Fox, in the amount of $500,000 each (the "Fraudulent Spousal Transfers").

67. The data in the EGS Funding Report that was prepared in O'Fallon, Missouri and delivered to Plaintiff by EVS was fraudulent because, without limitation, it  fraudulently understated the amount of Net Revenue of the Business by failing to include the amount of the Fraudulent Spousal Transfers, thereby fraudulently reducing the amount of the Management Fee paid to Plaintiff.

68. The EGS Funding report for 2019 ends on March 31, 2019, even though Plaintiff continued to manage the Business on behalf of Defendants until August 9, 2019.

69. Defendants therefore failed to pay the Management Fee due to Plaintiff from April 1, 2019 to August 9, 2019.

70. On June 3, 2019, the Secret Overfund on each Vehicle Service Contract was increased by another $25.00, which constituted additional Net Revenue to the Business from June 3, 2019 to August 9, 2019.

71. Due to the material misstatements in the EGS Funding Reports, Plaintiff requested from Defendants on multiple occasions to see the actual accounting records and financial statements, to which Defendants repeatedly failed to comply.

72.  Plaintiff notified Defendants of these frauds and breaches of the Contract.

73. In response, Defendants terminated the Contract effective August 9, 2019.  The true cash balance of the Business as of that day was $3,302,759.93.

74. Defendants have had prior legal troubles, including (a) *Enterprise Financial Group Inc. v. Barantas Incorporated, et al*., which was filed in 2017 and in which Enterprise Financial Group Inc. ("EFG") brought claims of breach of a 2008 agreement authorizing Barantas to procures vehicle service contracts on behalf of EFG, misappropriation and conspired to misappropriate trade secrets and tortious interference with contract; (b) a class action was filed against Fortegra Financial Corporation and EVS for violations of the Telephone Consumer Protection Act (the "TCPA"); and (c) *Miller v. EGC Companies, Inc*., Case No.: 5:20-cv-690, which was filed in 2020 and that was another class action suit brough for violations of the TCPA.

75. In federal courts, except in matters governed by the federal constitution or by acts of Congress, the law to be applied in any case is the law of the state in which the federal court is situated. *Erie v. Tompkins*, 304, U.S. 64, 58 S. Ct. 817, 822, 82 L.Ed. 1188 (1938).

## CAUSES OF ACTION

### COUNT I
Breach of Contract
(Against all Defendants)

76.    Plaintiff incorporates by this reference, as if the same were fully stated herein, each and every one of its allegations from Paragraphs One (1) through Seventy-Five (75).

77. In Missouri, the essential elements of a breach of contract action include: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff. *Moore v. Armed Forces Bank, N.A*., 534 S.W.3d 323,326 (Mo. App. 2017).

78.  The Contract exists on the terms as set forth in ¶¶ 39 –40 above.

79. Plaintiff fully performed the Contract as set forth in ¶ 46 above.

80. Defendants breached the Contract by: (a) understating the amount of Net Revenue of the Business by failing to include the amount of the Secret Overfund for each Vehicle Service Contract and Finance Charges for each financed Vehicle Service Contract collected; (b) overstating the amount of Payroll Expenses, Operating Expenses, and Reserves for the Business; (c)  understating the amount of Net Revenue of the Business by failing to include the amount of the Fraudulent Intercompany Transfers; (d) understating the amount of Net Revenue of the Business by failing to include the amount of the Fraudulent Spousal Transfers; (e) failing to pay to Plaintiff the Management Fee from April 1, 2019 to August 9, 2019; and/or (f) other breaches to be proven at trial, thereby reducing the amount of the Management Fee paid to Plaintiff to less than the agreed-upon Management Fee as set forth in the Contract.

81. As a direct and proximate result of Defendants' breaches, Plaintiff suffered general damages in excess of seventy-five thousand dollars ($75,000.00), the exact amount of which will be proven at trial.

82. As a direct and proximate result of Defendants' injurious conduct, Plaintiff has also suffered special damages under Missouri law in the amount of four thousand dollars ($4,000.00) in the form of expenditures paid to forensic accountants prior to the filing of this Complaint to determine the extent of the breaches by the Defendants.

**COUNT II**
Breach of Implied Covenant of Good Faith and Fair Dealing
(Against all Defendants)

83. Plaintiff incorporates by reference, as if the same were fully stated herein, each and every one of their allegations from Paragraph One (1) to Paragraph Eighty-Two (82).

84. In Missouri, a duty of good faith and fair dealing is implied in every contract. *Arbors at Sugar Creek Homeowners Ass'n v. Jefferson Bank & Trust Co.*, 464 S.W. 3d 177, 185 (Mo. banc 2015).

85. In Missouri, to successfully plead a breach of the covenant of good faith and fair dealing, a plaintiff must establish that the defendant exercised judgment conferred by the express terms of the agreement in such a manner as to evade the spirit of the transaction or so as to deny the plaintiff the expected benefits of the contract. *Mo. Consol. Health care Plan v. Cmty. Health Plan*, 81 S.W.3d 34, 46 (Mo. App. 2002).

86. The Contract represents a valid and binding contract.

87. Defendants owed a duty of good faith and fair dealing to Plaintiff.

88. Defendants breached this duty of good faith and fair dealing by exercising a judgment conferred by the express terms of the Contract in such a manner as to evade the spirit of the

transaction or so as to deny Plaintiff the expected benefit of the Contract by: (a) understating the amount of Net Revenue of the Business by failing to include the amount of the Secret Overfund for each Vehicle Service Contract and the Finance Charges for each of the financed Vehicle Service Contracts collected; (b)    overstating the amount of Payroll Expenses, Operating Expenses, and Reserves for the Business; (c)  understating the amount of Net Revenue of the Business by failing to include the amount of the Fraudulent Intercompany Transfers; (d) understating the amount of Net Revenue of the Business by failing to include the amount of the Fraudulent Spousal Transfers; (e) failing to pay to Plaintiff the Management Fee from April 1, 2019 to August 9, 2019; and/or (f) other breaches to be proven at trial, thereby reducing the amount of the Management Fee paid to Plaintiff to less than the agreed-upon Management Fee as set forth in the Contract. *Mo. Consol. Health Care Plan v. Cmty. Health Plan,* 81 S.W.3d 34, 46 (Mo. App. 2002).

89.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered general damages in excess of seventy-five thousand dollars ($75,000.00), the exact amount of which will be proven at trial.

90. As a direct and proximate result of Defendant's injurious conduct, Plaintiff has suffered special damages under Missouri law in the amount of four thousand dollars ($4,000.00) in the form of expenditures to forensic accountants prior to the filing of this Complaint to determine the extent of the breaches by the Defendants.

### Count III
Conversion
(Against all Defendants)

91. Plaintiff incorporates by this reference, as if the same were fully stated herein, each and every one of their allegations from Paragraphs One (1) through Ninety (90).

92. In Missouri, the three elements that must be established to prove a conversion are: (1) plaintiff was the owner of property or entitled to its possession; (2) defendant took possession of the property with the intent to exercise some control over it; and (3) defendant thereby deprived plaintiff of the right of the possession of the property. *Fehrman v. Pfetzing*, 917 S.W.2d 600, 602 (Mo. App. 1996).

93. Plaintiff's right to receive the amount by which the agreed-upon Management Fee exceeded the Management Fee paid to Plaintiff, the exact amount of which will be proven at trial, is an intangible property right that Plaintiff owned or was entitled to possession (the "Property").

94. Defendants took possession of the Property with the intent to exercise some control over it.

95. Defendants thereby deprived Plaintiff of the right of the possession of the Property.

96. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered general damages in excess of seventy-five thousand dollars ($75,000.00), the exact amount of which will be proven at trial.

97. As a direct and proximate result of Defendant's injurious conduct, Plaintiff has also suffered special damages under Missouri law in the amount of four thousand dollars ($4,000.00) in the form of expenditures to forensic accountants prior to the filing of the Complaint to determine the extent of the conversion by the Defendants.

98. The conduct of the Defendants was willful, malicious, and outrageous, entitling Plaintiff to an award of punitive damages in an amount no less than $5,000,000.00.

## COUNT IV

<u>Conspiracy to Breach of Contract</u>
(Against all Defendants)

99. Plaintiffs incorporate by this reference, as if the same were fully stated herein, each and every one of their allegations from Paragraphs One (1) through Ninety-Eight (98).

100.     In Missouri, the elements of a civil conspiracy claim are: (1) two or more persons; (2) an unlawful object; (3) a meeting of the minds; (4) one act in furtherance of the conspiracy, and (5) damages. *Oak Bluff Partners, Inc. v. Meyer*, 3 S.W.3d 777, 781 (Mo. 1999). "Unlawful" for the purposes of a civil conspiracy is not limited to conduct that is criminally liable; for example, it may include persons associating for the purpose of causing or inducing a breach of contract or business expectancy.  *Lyn-Flex West, Inc. v. Dieckhaus*, 24 S.W.3d 693, 700-01 (Mo. App. 1999).

101.     Patrick J. O'Brien, Brian P. Fox, EFS, EAS, EGS, EVS, EGV, Barantas I, Barantas II and/or STS (the "Conspirators") associated for the purposes of breaching the Contract by either withdrawing the Fraudulent Intercompany Transfer from and Business and/or receiving a Fraudulent Intercompany Transfer from the Business.

102.     An object to be accomplished was to breach the Contract by wrongfully understating the amount of Net Revenue of the Business by withdrawing the Fraudulent Intercompany Transfer from the Business and/or receiving the Fraudulent Intercompany Transfer from the Business, thereby failing to include the amount of the Fraudulent Intercompany Transfers in the Net Revenue of the Business.

103.     A meeting of the minds occurred among the Conspirators to breach the Contract by depriving Plaintiff of the amount by which the agreed-upon Management Fee exceeded the Management Fee paid to Plaintiff.

104.    EVS committed an act in furtherance of the conspiracy by preparing and delivering the weekly EGS Funding Reports to Plaintiff that failed to include the amount of the Fraudulent Intercompany Transfers in the Net Revenue of the Business.

105.    As a direct and proximate result of the Conspirators' wrongful conduct, Plaintiff suffered general damages in excess of seventy-five thousand dollars (75,000.00), the exact amount of which will be proven at trial.

106.    As a direct and proximate result of the Conspirators' injurious conduct, Plaintiff has also suffered special damages under Missouri law in the amount of four thousand dollars ($4,000.00) in the form of expenditures to forensic accountants prior to the filing of the Complaint to determine the extent of this injurious conduct.

107.    The conduct of the Conspirators was willful, malicious, and outrageous, entitling Plaintiffs to an award of punitive damages in an amount no less than $5,000,000.00.

**COUNT V**
<u>Conspiracy to Breach of Contract</u>
(Against Patrick J. O'Brien, Brian P. Fox, Susan O'Brien, and Brittany Fox)

108.    Plaintiff incorporates by this reference, as if the same were fully stated herein, each and every one of its allegations from Paragraph One (1) to Paragraph One Hundred Seven (107).

109.    In Missouri, the elements of a civil conspiracy claim are: (1) two or more persons; (2) an unlawful object; (3) a meeting of the minds; (4) one act in furtherance of the conspiracy, and (5) damages. *Oak Bluff Partners, Inc. v. Meyer*, 3 S.W.3d 777, 781 (Mo. 1999). "Unlawful" for the purposes of a civil conspiracy is not limited to conduct that is criminally liable; for example, it may include persons associating for the purpose of causing or inducing a breach of

contract or business expectancy. *Lyn-Flex West, Inc. v. Dieckhaus*, 24 S.W.3d 693, 700-01 (Mo. App. 1999).

110.    Patrick J. O'Brien, Brian P. Fox, Susan O'Brien, and Britany Fox associated for the purposes of breaching the Contract by either withdrawing the Fraudulent Spousal Transfer from the Business and/or receiving a Fraudulent Spousal Transfer from the Business

111.    An object to be accomplished was to breach the Contract by wrongfully understating the amount of Net Revenue of the Business by withdrawing the Fraudulent Spousal Transfer from the Business and/or receiving the Fraudulent Spousal Transfer from the Business, thereby failing to include the amount of the Fraudulent Spousal Transfers in the Net Revenue of the Business.

112.    A meeting of the minds occurred among Patrick J. O'Brien, Brian P. Fox, Susan O'Brien, and Brittany Fox to breach the Contract by depriving Plaintiff of the amount by which the agreed-upon Management Fee exceeded the Management Fee paid to Plaintiff.

113.    EVS committed an act in furtherance of the conspiracy by preparing and delivering the weekly EGS Funding Reports to Plaintiff that failed to include the amount of the Fraudulent Spousal Transfers in the Net Revenue of the Business.

114.    As a direct and proximate result of this wrongful conduct, Plaintiff suffered general damages in excess of seventy-five thousand dollars (75,000.00), the exact amount of which will be proven at trial.

115.    As a direct and proximate result of this injurious conduct, Plaintiff has also suffered special damages under Missouri law in the amount of four thousand dollars ($4,000.00) in the form of expenditures to forensic accountants prior to the filing of the Complaint to uncover the Fraudulent Spousal Transfers.

116.    The conduct of Patrick J. O'Brien, Brian P. Fox, Susan O'Brien, and Brittany Fox was willful, malicious, and outrageous, entitling Plaintiffs to an award of punitive damages in an amount no less than $5,000,000.00.

## COUNT VI
### Unjust Enrichment
### (Against all Defendants)

117.    Plaintiff incorporates by reference, s if the same were fully stated herein, each and every one of their allegations from Paragraph (1) to Paragraph One Hundred Sixteen (116).

118.    In Missouri, the elements of unjust enrichment are: (a) a benefit conferred upon the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) acceptance and retention by the defendant of that benefit which is unjust and/or inequitable. *Petrie V. LeVan*, 799 S.W.2d 632, 635 (Mo. App. 1990).

119.    A benefit was conferred upon the Defendants by Plaintiff from February 20, 2015 to August 31, 2019 when Plaintiff renewed thousands of existing, expiring, or expired Vehicle Service Contracts on behalf of Defendants, generating millions of dollars in Net Revenue to the Business (the "Benefit").

120.    Defendants appreciated the Benefit because they knew and were aware that Plaintiff was renewing thousands of Vehicle Service Contracts on Defendants' behalf.

121.     Defendant accepted and retained the Benefit which is unjust and/or inequitable.

122.    As a direct and proximate result of this wrongful conduct, Plaintiff suffered general damages in excess of seventy-five thousand dollars (75,000.00), the exact amount of which will be proven at trial.

123.    As a direct and proximate result of this injurious conduct, Plaintiff has also suffered special damages under Missouri law in the amount of four thousand dollars ($4,000.00)

in the form of expenditures to forensic accountants prior to the filing of the Complaint to determine the amount of the Benefit.

## COUNT VII
### Quantum Meruit
(Against all Defendants)

124.    Plaintiff incorporates by this reference, as if the same were fully states herein, each and every one of their allegations from Paragraph One (1) to Paragraph One Hundred Twenty-Three (123).

125.    In Missouri, the elements of quantum meruit are: (1) the plaintiff provided to the defendant materials or services at the defendant's request or with the acquiescence of the defendant; (2) that the materials or services had a reasonable value; and (3) that the defendant has failed and refused to pay the reasonable value of the material or services despite demand of plaintiff. *County Asphalt Paving Co. v. Mosley Constr. Inc.*, 239 S.W.3d 704, 710 (Mo. App. 2007).

126.    Plaintiff provided services to Defendants in the form of renewing thousands of existing, expiring, or expired Vehicle Service Contracts (the "Services") at the Defendants' request or with the acquiescence of the Defendants.

127.    The Services had a reasonable value.

128.    Defendants have failed and refused to pay the reasonable value of the Services despite demand of the Plaintiff.

129.    As a direct and proximate result of this wrongful conduct, Plaintiff suffered general damages in excess of seventy-five thousand dollars (75,000.00), the exact amount of which will be proven at trial.

130.    As a direct and proximate result of this injurious conduct, Plaintiff has also suffered special damages under Missouri law in the amount of four thousand dollars ($4,000.00) in the form of expenditures to forensic accountants prior to the filing of the Complaint to determine the amount of the Services.

**COUNT VIII**
Fraud/Intentional Misrepresentation
(Against all Defendants)

131.    Plaintiffs incorporate by this reference, as if the same were fully stated herein, each and every one of their allegations from Paragraphs One (1) through One Hundred Thirty (130).

132.    In Missouri, fraud/intentional misrepresentation consists of: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or his/her ignorance of the truth; (5) the speaker's intent that his/her representation should be acted upon by the hearer in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's proximately caused injury. *Clark v. Olson*, 726 S.W.2d 718, 721 (Mo. 1987).

133.    Between February 11, 2015 and February 20, 2015, one or both of the Individual Defendants, on behalf of the Defendants, made the Representations to Plaintiff as set forth in ¶ 38 above.

134.    These Representations were false because between February 20, 2015 and August 31, 2019, Defendants: (a) fraudulently understated the amount of Net Revenue of the Business by failing to include the amount of the Secret Overfund for each Vehicle Service Contract; (b) fraudulently overstated the amount of Payroll Expenses, Operating Expenses, and Reserves  for

the Business; (c) fraudulently understated the amount of Net Revenue of the Business by failing to include the amount of the Fraudulent Intercompany Transfers; (d) fraudulently understated the amount of Net Revenue of the Business by failing to include the amount of the Fraudulent Spousal Transfers; (e) fraudulently failed to pay to Plaintiff the Management Fee from April 1, 2019 to August 9, 2019; and/or (f) other false representations to be proven at trial, thereby reducing the amount of the Management Fee paid to Plaintiff to less than the agreed-upon Management Fee as set forth in the Contract.

135.    These Representations were material as they induced Plaintiff to manage the Business on behalf of Defendants.

136.    Defendants knew these Representations were false or were ignorant of the truthfulness or falsity of the representations.

137.    Defendants intent was that their Representations should be acted on by the Plaintiff in the manner reasonably contemplated.

138.    Plaintiff was ignorant of the falsity of the Representations.

139.    Plaintiff relied on the Representations being true by managing the Business on behalf of the Defendants.

140.    Plaintiff had the right to rely on the Representations because the Plaintiff managed the Business, on behalf of the Defendants.

141.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered general damages in excess of seventy-five thousand dollars (75,000.00), the exact amount of which will be proven at trial.

142.    As a direct and proximate result of Defendant's injurious conduct, Plaintiff has also suffered special damages under Missouri law in the amount of four thousand dollars

($4,000.00)   in the form of expenditures to forensic accountants prior to the filing of the Complaint to determine the extent of the fraud perpetrated on Plaintiff by the Defendants.

143.    The conduct of Defendants was willful, malicious, and outrageous, entitling Plaintiff to an award of punitive damages in an amount no less than $5,000,000.00.

### COUNT IX
Fraud/Intentional Misrepresentation
(Against EVS)

144.    Plaintiff incorporates by this reference, as if the same were fully stated herein, each and every one of its allegations from Paragraph One (1) through Paragraph One Hundred Forty-three (143).

145.    In Missouri, fraud/intentional misrepresentation consists of: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or his/her ignorance of the truth; (5) the speaker's intent that his/her representation should be acted upon by the hearer in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's proximately caused injury. *Clark v. Olson*, 726 S.W.2d 718, 721 (Mo. 1987).

146.    Each week from February 20, 2015 to March 31, 2019, Shawna Killian on behalf of EVS made representations to Plaintiff in the form of EGS Funding Reports regarding the Net Revenue, Net Income and Management Fee payable to Plaintiff for each such week.

147.    Each of these representations was false because: (a) the Net Revenue of the Business was materially misstated and fraudulently misrepresented the true financial performance of the Business by failing to include the amount of the Secret Overfund for each Vehicle Service Contract and the Finance Charges for each financed Vehicle Service Contract

collected; (b)   the Net Revenue of the Business was materially misstated and fraudulently misrepresented the true financial performance of the Business by fraudulently overstating the amount of Payroll Expenses, Operating Expenses, and Reserves for the Business; (c)   the Net Revenue of the Business was materially misstated and fraudulently misrepresented the true financial performance of the Business by fraudulently understating the amount of Net Revenue of the Business by failing to include the amount of the Fraudulent Intercompany Transfers; (d) the Net Revenue of the Business was materially misstated and fraudulently misrepresented the true financial performance of the Business by fraudulently understating the amount of Net Revenue of the Business by failing to include the amount of the Fraudulent Spousal Transfers; and/or (e) other false representations to be proven at trial, thereby reducing the amount of the Management Fee paid to Plaintiff to less than the agreed-upon Management Fee as set forth in the Contract.

148.   These representations were material as they induced Plaintiff to manage the Business on behalf of Defendants.

149.   EVS knew these representations were false or were ignorant of the truthfulness or falsity of the EGS Funding Reports.

150.   EVS' intent was that the representations should be acted on by the Plaintiff in the manner reasonably contemplated.

151.   Plaintiff was ignorant of the falsity of the representations.

152.   Plaintiff relied on the representations being true by managing the Business on behalf of the Defendants.

153.   Plaintiff had the right to rely on the representations because Shawna Killian on behalf of EVS prepared them for delivery to Plaintiff as contemplated by the Contract.

154.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered general damages in excess of seventy-five thousand dollars ($75,000.00), the exact amount of which will be proven at trial.

155.     As a direct and proximate result of EVS' injurious conduct, Plaintiff has also suffered special damages under Missouri law in the amount of four thousand dollars ($4,000.00) in the form of expenditures to forensic accountants prior to the filing of the Complaint to determine the extent of the fraud perpetrated on Plaintiff by EVS.

156.     The conduct of Defendants was willful, malicious, and outrageous, entitling Plaintiff to an award of punitive damages in an amount no less than $5,000,000.00.

## COUNT X
### Fraud/Negligent Misrepresentation
(Against all Defendants)

157.     Plaintiff incorporates by this reference, as if the same were fully stated herein, each and every one of their allegations from Paragraphs One (1) through One Hundred Fifty-Six (156).

158.     In Missouri, the elements of fraud/negligent misrepresentation are: (1) a speaker supplied information in the course of business or because of some other pecuniary interest; (2) that due to the speaker's failure to exercise reasonable care, the information was false; (3) that speaker intentionally provided the information for the guidance of a limited group of persons in particular business; (4) that the listener justifiably relied on the information; and (5) that as a result of the listener's reliance on the statement, he/she suffered a pecuniary loss. *Ligon Specialized Hauler, Inc. v. Inland Container Corp.*, 581 S.W.2d 906, 909 Mo. App. 1979).

159.     Between February 11, 2015 and February 20, 2015, one or both of the Individual Defendants, on behalf of the Defendants, made the Representations to Plaintiff as set forth in ¶ 38 above.

160.    Due to Defendants' failure to exercise reasonable care, each of these representations was false because: (a) the Net Revenue of the Business was materially misstated and fraudulently misrepresented the true financial performance of the Business by failing to include the amount of the Secret Overfund for each Vehicle Service Contract and the Finance Charges for each financed Vehicle Service Contract collected; (b)  the Net Revenue of the Business was materially misstated and fraudulently misrepresented the true financial performance of the Business by fraudulently overstating the amount of Payroll Expenses, Operating Expenses, and Reserves for the Business; (c)  the Net Revenue of the Business was materially misstated and fraudulently misrepresented the true financial performance of the Business by fraudulently understating the amount of Net Revenue of the Business by failing to include the amount of the Fraudulent Intercompany Transfers; (d) the Net Revenue of the Business was materially misstated and fraudulently misrepresented the true financial performance of the Business by fraudulently understating the amount of Net Revenue of the Business by failing to include the amount of the Fraudulent Spousal Transfers; and/or (e) other false representations to be proven at trial, thereby reducing the amount of the Management Fee paid to Plaintiff to less than the agreed-upon Management Fee as set forth in the Contract.

161.    Defendants intentionally made the Representations for the guidance of Plaintiff in the management of the Business.

162.    Plaintiff justifiably relied on the Representation by managing the Business on behalf of Defendants.

163.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered general damages in excess of seventy-five thousand dollars ($75,000.00), the exact amount of which will be proven at trial.

164.     As a direct and proximate result of Defendants' injurious conduct, Plaintiff has also suffered special damages under Missouri law in the amount of four thousand dollars ($4,000.00)   in the form of expenditures to forensic accountants prior to the filing of the Complaint to determine the extent of the fraud perpetrated on Plaintiff by Defendants.

165.     Defendants knew or had reason to know a high degree of probability existed that the Representations made to Plaintiff would result in injury, entitling Plaintiff to an award of punitive damages in an amount no less than $5,000,000.00. *Tubbs, et. al. v.  v. BNSF Railway Company*, WD 80749 (Mo. App. September 4, 2018).

**COUNT XI**
Fraud/Negligent Misrepresentation
(Against EVS)

166.     Plaintiff incorporates by reference, as if the same were fully stated herein, each and every one of their allegations from Paragraph One (1) through One Hundred Sixty-Five (165).

167.     In Missouri, the elements of fraud/negligent misrepresentation are: (1) a speaker supplied information in the course of business or because of some other pecuniary interest; (2) that due to the speaker's failure to exercise reasonable care, the information was false; (3) that speaker intentionally provided the information for the guidance of a limited group of persons in particular business; (4) that the listener justifiably relied on the information; and (5) that as a result of the listener's reliance on the statement, he/she suffered a pecuniary loss. *Ligon Specialized Hauler, Inc. v. Inland Container Corp.*, 581 S.W.2d 906, 909 Mo. App. 1979).

168.     Each week from February 20, 2015 to March 31, 2019, Shawna Killian on behalf of EVS made representations to Plaintiff in the form of EGS Funding Reports regarding the Net Revenue, Net Income and Management Fee payable to Plaintiff for each such week.

169.    Due to EVS' failure to exercise reasonable care, each of these representations was false because: (a) the Net Revenue of the Business was materially misstated and fraudulently misrepresented the true financial performance of the Business by failing to include the amount of the Secret Overfund for each Vehicle Service Contract and the Finance Charges for each financed Vehicle Service Contract collected; (b)  the Net Revenue of the Business was materially misstated and fraudulently misrepresented the true financial performance of the Business by fraudulently overstating the amount of Payroll Expenses, Operating Expenses, and Reserves  for the Business; (c)  the Net Revenue of the Business was materially misstated and fraudulently misrepresented the true financial performance of the Business by fraudulently understating the amount of Net Revenue of the Business by failing to include the amount of the Fraudulent Intercompany Transfers; (d) the Net Revenue of the Business was materially misstated and fraudulently misrepresented the true financial performance of the Business by fraudulently understating the amount of Net Revenue of the Business by failing to include the amount of the Fraudulent Spousal Transfers; and/or (e) other false representations to be proven at trial, thereby reducing the amount of the Management Fee paid to Plaintiff to less than the agreed-upon Management Fee as set forth in the Contract.

170.    EVS intentionally made the representations for the guidance of Plaintiff in the management of the Business.

171.    Plaintiff justifiably relied on the representations by managing the Business on behalf of Defendants.

172.    As a direct and proximate result of EVS' wrongful conduct, Plaintiff suffered general damages in excess of seventy-five thousand dollars ($75,000.00), the exact amount of which will be proven at trial.

173.    As a direct and proximate result of EVS' injurious conduct, Plaintiff has also suffered special damages under Missouri law in the amount of four thousand dollars ($4,000.00) in the form of expenditures to forensic accountants prior to the filing of the Complaint to determine the extent of the fraud perpetrated on Plaintiff by EVS.

174.    EVS knew or had reason to know a high degree of probability existed that the representations would result in injury, entitling Plaintiff to an award of punitive damages in an amount no less than $5,000,000.00. *Tubbs, et. al. v.  v. BNSF Railway Company*, WD 80749 (Mo. App. September 4, 2018).

WHEREFORE, Plaintiff respectfully requests that this Court grant judgment in their favor against Defendants, Susan O'Brien, and Brittany Fox for:

a.   General damages in excess of seventy-five thousand dollars ($75,000.00), the exact amount of which will be proven at trial.

b.   Special damages in the amount of four thousand dollars ($4,000.00).

c.   Punitive damages in an amount no less than $5,000,000.00.

d.   Together with interest, attorneys' fees, and costs.

Plaintiffs further request such other and further relief as this Court deems just and proper under the circumstances.

Respectfully submitted,

COSGROVE LAW GROUP, LLC

 /s/ David B. Cosgrove
David B. Cosgrove, Fed# 40980MO
Charles M. Simpson, Fed# 66228MO
7722 Big Bend Boulevard
St. Louis, Missouri 63119
Telephone: (314) 563-2490
Facsimile: (314) 968-7371
E-mail:  dcosgrove@cosgrovelawllc.com
         msimpson@cosgrovelawllc.com

*Attorneys for Plaintiff Paragon Partners, Inc.*